UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 2, 2012

LETTER TO COUNSEL

    RE:    <u>Howard Ray Shaffer v. Commissioner, Social Security</u>; Civil No. SAG-10-1962

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Howard Ray Shaffer's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). (Paper Nos. 13 and 25). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6 (D. Md. 2011). For the reasons that follow, this Court GRANTS the Commissioner's Motion and DENIES the Plaintiff's Motion.

Howard Ray Shaffer ("Claimant"), applied for DIB and SSI on September 28, 2007, alleging that he had been disabled since June 1, 2007. (Tr. 113-123). His claim was denied initially and upon reconsideration. (Tr. 69-73, 78-81). Claimant had a hearing before an Administrative Law Judge ("ALJ") on August 11, 2009. (Tr. 33-64). After allowing time for Claimant's counsel to provide additional medical records, the ALJ denied Claimant's claim in a decision dated October 7, 2009. (Tr. 14-32). The ALJ found that Claimant retained the residual functional capacity ("RFC") to perform a limited range of light (and therefore also sedentary) work. (Tr. 26). The ALJ found that Claimant was not able to perform any of his past relevant work, but that considering his age, education, work experience, and RFC, and testimony from a vocational expert ("VE"), there were jobs that existed in the national and local economies that Claimant could perform. (Tr. 31). Accordingly, the ALJ found that Claimant was not disabled. (Tr. 31-32). On June 4, 2010, the Appeals Council denied Claimant's request for review, making his case ready for judicial review. (Tr. 1-4).

Claimant presents several arguments in support of his contention that the Commissioner's final decision is not supported by substantial evidence. He first argues that there was not substantial evidence supporting the ALJ's conclusion that Claimant retained the RFC to perform a limited range of light or sedentary work. *See* Plaintiff's Memorandum, pp. 21-28. For the reasons that follow, I disagree.

The ALJ fulfilled her duties by discussing how she considered the medical evidence in this case. The ALJ performed a detailed review of Claimant's treatment records at the appointments following his August and September, 2007 surgery and hospitalizations. (Tr. 21-22). Several of those appointments for follow-up care were conducted by Dr. Steven Hearne, M.D., who also submitted a Cardiac Residual Functional Capacity Questionnaire ("the Questionnaire") on December 3, 2008. (Tr. 524-28). Once Claimant recovered from his 2007 surgery, Dr. Hearne did not require frequent examinations. For example, on October 23, 2007, Dr. Hearne instructed Claimant to follow up in nine months. (Tr. 505). On April 4, 2008, Dr. Hearne prescribed a follow-up appointment in six months. (Tr. 502). On September 22, 2008, the last appointment prior to Dr. Hearne's completion of the Questionnaire, Dr. Hearne reduced Claimant's dosage of medication and instructed him to see a nurse practitioner ("CRNP") in four to six weeks to check on the adjusted dosage. (Tr. 500). At that follow-up with the CRNP, Claimant was instructed to see Dr. Hearne again in three to four months. (Tr. 499). The ALJ explained that she assigned only "some weight" to Dr. Hearne's Questionnaire because that opinion was inconsistent with his treatment notes, which reflected that Claimant was suffering from mild symptoms. (Tr. 29). That assessment is supported by substantial evidence in the notes from Dr. Hearne's several appointments with Claimant and in the treatment notes of other physicians who saw Claimant after his recovery from the surgery. None of those treating sources placed any significant restrictions on Claimant's activities, and certainly not to the extent suggested in the Questionnaire. Moreover, as the ALJ noted, in May of 2008 the Claimant completed an Adult Function Report which described his capabilities as much greater than they were described in the Questionnaire. (Tr. 27).

In light of the ALJ's sufficient analysis of Dr. Hearne's opinion, the comparative weight afforded to the state agency physicians does not provide a basis for remand. SSR 96-6p provides that an ALJ may afford great weight to non-examining state agency physicians' opinions. After review of the entire record, I find that the ALJ adequately discussed the reasons for affording the state agency physicians' opinions significant weight. Specifically, the ALJ determined that those opinions were consistent with the other evidence of record, largely because they cited to the numerous notes from Claimant's treating physicians indicating overall satisfaction with his condition. For example, Dr. J. Biddison, a state agency non-examining physician, noted that Claimant's follow-up appointments after the August/September 2007 hospitalizations noted that Claimant was "doing well cardiac-wise." (Tr. 426). Similarly, Dr. L. Robbins, also noted that treating physicians had described Claimant as "doing well" and "currently stable." (Tr. 433-434). In light of the correspondence between the evidence cited by the ALJ and the findings of the state agency physicians, all of this evidence was properly considered by the ALJ. I find the ALJ's findings are explained adequately and are supported by substantial evidence.

Claimant's contention about the inadequacy of the ALJ's findings regarding the RFC assessment also extends to Claimant's mental impairments. The ALJ assigned "some weight" to the opinion of non-examining physician Dr. K. Wessel, because the ALJ disputed Dr. Wessel's characterization of some of Claimant's limitations as "moderate." (Tr. 30). The ALJ cited to the fact that the mental limitations appear to have only a mild effect on Claimant's activities of daily living. (Tr. 30). The ALJ concurred with Dr. Wessel's conclusion that "the claimant's residual functional capacity appears compatible with work related functions equated with competitive employment." (Tr. 467). In accordance with Dr. Wessel's report, the ALJ did find Claimant's

memory impairment and depression to be severe impairments at Step Two. (Tr. 20). In addition, as addressed more specifically below, the ALJ incorporated restrictions in her RFC to account for Claimant's mental health issues, including those listed as "moderate" limitations by Dr. Wessel. Claimant further contends that the ALJ failed to assign weight to the opinion of Dr. Donna Ignelzi-Ferraro. (Tr. 445-447). However, Dr. Ignelzi-Ferraro did not complete a RFC form. She did diagnose Claimant with memory impairment and depression, but those diagnoses were entirely consistent with the ALJ's findings regarding severe impairments. There is no requirement that each practitioner's opinion be explicitly addressed, where implicit assignments of weight can provide an opportunity for meaningful review. *See Chandler v. Comm'r of Social Sec.,* 2011 WL 6062067 at *4 (3d Cir. Dec. 7, 2011). In this case, the basis for the ALJ's assessment of Claimant's RFC is sufficiently clear for review, and is supported by substantial evidence.

Claimant next argues that the ALJ did not fairly set out all of Claimant's impairments in the hypothetical question to the VE, specifically because the ALJ failed to address the memory deficits identified by the medical sources. Pl. Mem. at 28. The ALJ's hypothetical was as follows:

> Now, we're going to consider a hypothetical person who is the Claimant's stated age at onset. That would be 50 years. This person has a 12th grade education, the work history that you just talked about. There are certain underlying impairments that place limitations on the ability to do work related activities. We'll start at a light level of exertion. Posturals are all occasional, but there should be no climbing of a ladder, a rope, or a scaffold. This individual should avoid environmentally all exposure to hazards, hazards being defined as heights, being near heights and moving machinery. Additionally this individual would have a limitation to simple unskilled work, work that would not be at production pace. That means paid by piece or working at an assembly line, and work that's low stress, defined as only occasional, need to make decisions, or use judgment.

(Tr. 61). While the ALJ's hypothetical did not incorporate the phrase "memory deficits," it is clear that some of the specific limitations in the RFC were intended to take Claimant's memory issues into consideration. Specifically, the ALJ's references to "simple unskilled work" and "only occasional need to make decisions or use judgment" are limitations to the full range of "light work" to adjust for memory impairment. The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). In this case, the hypothetical presented to the VE was supported by substantial evidence and adequately included all the limitations that were deemed credible by the ALJ. In response to the hypothetical, the VE identified several appropriate light and sedentary jobs in the local and national economies. (Tr. 61-62). The ALJ also complied with her duty to inquire whether the VE's findings conflicted with the DOT. *See Cline v. Chater*, 82 F.3d 409 (4th Cir. 1996); *see also* SSR 00-4p. (Tr. 62).

Finally, Claimant argues that the ALJ failed to consider his Crohn's disease as a severe

impairment, and failed to consider it in combination with other impairments. Pl. Mem. at 28-29. However, the ALJ specifically considered whether Claimant's Crohn's disease constituted a severe impairment, and she provided a detailed explanation of her analysis. (Tr. 23-24). Substantial evidence supports the ALJ's conclusion that Claimant's Crohn's disease was not a severe impairment, because Claimant worked for many years with Crohn's disease and reported only occasional "flares." (Tr. 24). Because the Crohn's disease had only a minimal effect on Claimant's ability to perform basic work activities, the ALJ properly considered the impairment to be "not severe." *Evans v. Heckler,* 734 F.2d 1012 (4th Cir. 1984). As a result of the minimal effects posed by the Crohn's disease, there were no significant symptoms that the ALJ failed to consider in combination with Claimant's severe impairments.

Thus, for the reasons given, this Court GRANTS the Commissioner's Motion for Summary Judgment and DENIES Claimant's Motion.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate Order shall issue.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge